UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MICHELLE WHITE                                                                                    PLAINTIFF

v.                              CASE NO. 5:09cv00026 BSM

MIKE HOLCOMB, Individually and
In His Official Capacity as Jefferson
County Judge and THE QUORUM
COURT OF JEFFERSON COUNTY,
ARKANSAS, A Public Body Corporate                                                      DEFENDANT

## ORDER

Plaintiff, Michelle White ("White"), is suing defendants Mike Holcomb ("Holcomb"), individually and in his official capacity as Jefferson County Judge, and the Quorum Court of Jefferson County ("Quorum Court") claiming that defendants terminated her based on her race and denied her due process by failing to give her notice and a hearing. Defendants have moved for summary judgment [Doc. No. 12], to which White has responded [Doc. No. 20]. For the reasons set forth below, the motion is granted.

### I. FACTS

When viewed in the light most favorable to White, the facts show that Holcomb served as Jefferson County Judge in 2007 and 2008, and that he hired White as his legislative assistant in November, 2006. Plaintiff's response to defendants' statement of facts (Doc. No. 22) ("pltf.'s resp. to sof"), ¶¶ 3-5. Prior to that, she worked in the Jefferson County Clerk's Office as a probate clerk. Plaintiff's response to motion for summary judgment (Doc. No. 20) ("pltf.'s resp."), Ex. 1, White affidavit, ¶ 5. Despite the titles, in Arkansas a county judge

has no judicial function but serves as the head of the executive branch of county government, while the Quorum Court is the county's legislative branch.

As Holcomb's assistant, White was responsible for preparing legislative documents for the Quorum Court. Plaintiff's brief in support of response to motion for summary judgment (Doc. No. 21) ("pltf.'s brief"), p. 2; Pltf.'s resp., Ex. 3, Holcomb deposition, 10:8-12. A number of documents White prepared for the Quorum Court contained errors made by White. Defendants' brief in support of motion for summary judgment (Doc. No. 13) ("defs' brief"), Ex. A, legislative documents. These errors, however, were corrected by other staff members, who often reviewed these documents before their final submission to the Quorum Court. Defs' brief, Ex. C, White memo; Pltf.'s resp., Ex. 1, White affidavit, ¶ 2; Pltf.'s resp., Ex. 3, Holcomb deposition, 10:8-18. The final legislative documents submitted for the February 2007 Quorum Court meeting contained errors. Pltf.'s resp., Ex. 3, Holcomb deposition, 12:2-12. The majority of those documents, however, were prepared by the previous legislative assistant. *Id.*

On July 9, 2008, Holcomb gave a written warning to White because of her poor behavior and performance. Defs' brief, Ex. B, Holcomb warning letter. First, while attending a finance committee meeting, she refused to answer questions posed by the Quorum Court's finance committee chairman. *Id.* The warning indicates that she was asked the question twice and only on the second occasion did she respond by stating: "yeah, I got it." *Id.* The warning notes that her body language displayed irritation. *Id.* The warning also references mistakes she made in preparing agendas for the Quorum Court's committee

meetings, stating that her efforts are not up to the standard required. *Id*. Finally, the letter states that White should consider it a warning to improve her job performance. *Id*.

White maintains that she did not behave rudely at the July 9, 2008 meeting. Pltf.'s resp., Ex. 1, White affidavit, ¶ 3. She also notes that she responded to the written warning on July 14, 2008, and stated that the errors were not entirely her fault because she submitted the documents to Holcomb's administrative assistant for review prior to final submission. Defs' brief, Ex. C, White memo. She also noted in her response that writing, figuring, or refiguring funding requests were duties of the administrative assistant. *Id*. She asserted that fund requests submitted by elected officials were often submitted the day before the agenda packets were sent out, after the established deadlines, which made it difficult for her to draft accurate agendas. *Id*. She finally asserted that if she was expected to continue to perform the duties of administrative assistant, Holcomb could continue to expect mistakes. *Id*.

On July 22, 2008, Holcomb submitted a confidential memorandum to White's personnel file stating that he did not agree with everything contained in White's response. Defs' brief, Ex. D, Holcomb memo. Further, he noted that White's response was evidence of her difficulty accepting constructive advice or correction, oppositional nature, and desire to pass the blame. *Id*. Holcomb also expressed his hope that White would improve her performance and attitude. *Id*.

Holcomb met with White on December 10, 2008. Pltf.'s resp. to sof, ¶ 9. At this meeting, Holcomb explained to White that she would no longer be serving as his legislative assistant. *Id*. He gave her the option of transferring to the Jefferson County Clerk's Office

as a senior probate clerk. *Id*. If she did not take this position, she would be terminated. Pltf.'s brief, p.4. White refused to accept the new position. Pltf.'s resp. to sof, ¶ 10. She took the remainder of the day off and returned to work the following week. Pltf.'s resp., Ex. 2, White deposition, 7:22-25.

Upon returning to work, White received a letter from Holcomb, dated December 12, 2008, confirming the conversation he had with her on December 10, 2008. Defs' brief, Ex. E, Holcomb confirmation letter. The letter stated, "If you accept the transfer you would not lose any salary or benefits. The hours would also be the same. If you refuse the transfer I will consider this as your resignation based upon advice from our attorney." *Id*.

On December 16, 2008 and December 22, 2008, White had conversations with Lafayette Woods, Sr., the circuit clerk. Pltf.'s resp. to sof, ¶ 15. Woods encouraged White to take the position in the clerk's office. *Id*. During both conversations, White stated that she would not take the position. *Id*. at ¶ 16.

On December 29, 2008, Patricia Royal Johnson, the Jefferson County Clerk, sent a letter to White informing her that the position as probate clerk was no longer available. Defs' brief, Ex. F, Johnson letter. Johnson stated that she understood the offer to be available from December 10, 2008 until December 19, 2008, and that on December 19, 2008 she did not receive a response from White. *Id*. The same day, White sent a letter to Holcomb stating "[i]n view that I am being transferred to the County Clerk's Office and in that I am most sorrowful to acknowledge this leave. I need to know if there is any task that you want me to complete or perform before I report to the County Clerk." Pltf.'s resp., Ex. 6, White letter.

White asserts that this constituted her acceptance of the probate clerk position. Pltf.'s brief, p.5. White showed up for work at the clerk's office on January 2, 2009. Pltf.'s resp., Ex. 2, White deposition, 9:23-10:2. Upon arrival, however, she was informed that there was no longer an opening. *Id*.

White sued the above-named defendants on January 27, 2009 alleging race discrimination and violation of her due process rights.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exist and the movant is entitled to judgment as a matter of law." *Christoffersen v. Yellow Book U.S.A.*, 536 F.3d 947, 949 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56,

must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Further, "[t]he nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine . . ." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). It does not weigh the evidence or make credibility determinations. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

III. DISCUSSION

A. Title VII and 42 U.S.C. § 1983 Claim

To survive summary judgment, White must present direct evidence of race discrimination or create an inference of discrimination under the three-step *McDonnell Douglas* burden-shifting framework. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010). In that White presents no direct evidence of discrimination in support of her Title VII and § 1983 claims, the *McDonnell Douglas* three-step burden-shifting analysis must be used to evaluate her claims. *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007) (quoting *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 550 (8th Cir. 2005)). Under the *McDonnell Douglas* burden-shifting test, White must first establish a prima facie case of discrimination. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008). To establish a prima facie case White must show: (1) that she is a member of a protected class; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that the circumstances give rise to an inference of discrimination. *Lake*, 596 F.3d at 874.

Once this initial threshold is met, Holcomb and the Quorum Court are required to rebut the new presumption that they "unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). This requires Holcomb and the Quorum Court to produce evidence of some legitimate, nondiscriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If they successfully rebut White's prima facie case, the presumption of discrimination "drops from the case." *Hicks*,

509 U.S. at 509. White could still succeed in the third step of the analysis, however, by demonstrating that the stated reason for her discharge was pretextual or untrue. *Id.* at 508; *Ledergerber v. Strangler*, 122 F. 3d 1142, 1144 (8th Cir. 1997).

White meets the first three elements of a prima facie case of race discrimination. First, White is a black female, and therefore is a member of a protected class. Second, White must show that she was meeting her employer's legitimate job expectations. Although the failure to conduct herself professionally and to produce adequate documents for the Quorum Court is grounds for termination, whether this was the case is a factual dispute that must be determined by the jury. Further, the Eighth Circuit has held that an individual is not required to disprove the employer's reason for termination. Rather, the second element is met by showing that, regardless of the employer's reason for termination, the employee "was *otherwise* meeting expectations or *otherwise* qualified." *Lake*, 596 F.3d at 874. While there is a factual dispute as to whether White was meeting Holcomb's expectations, it is undisputed that she was "otherwise qualified" for the position. This is true because the record indicates that, prior to taking the position, she spent five years working in the Jefferson County Clerk's Office and that, upon taking the position, she was trained by the outgoing legislative assistant. Third, White suffered an adverse employment action because she was not allowed to maintain her position as legislative assistant. Although she was offered a position in the Jefferson County Clerk's Office, she was ultimately terminated.

White fails, however, to present a genuine issue of material fact as to whether the circumstances give rise to an inference of discrimination, which is the fourth element of her

claim. The Eighth Circuit has acknowledged that there are multiple ways to satisfy the fourth element of a prima facie case of race discrimination. *See Lewis v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033, 1040 (8th Cir. 2010). Although usually considered at the third stage of the *McDonnell Douglas* analysis, evidence of pretext can be used to establish the fourth element of a prima facie case. "A common way of proving pretext is to show that similarly situated employees were more favorably treated." *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003).

White attempts to show pretext with allegations that Holcomb and the Quorum Court treated a similarly situated employee, Lydia Stout ("Stout"), differently. Although Stout is a white female employed by Jefferson County, she was employed as the chief deputy clerk in the Jefferson County Clerk's Office and not as the county judge's legislative assistant. White asserts that Holcomb presented a plan to Johnson in which Stout would take the position as his legislative assistant and White would be transferred to the clerk's office. White maintains that this would be a promotion for Stout, but a demotion for herself.

In her response, White seems to allege that Stout's supervisor, Johnson, was not satisfied with Stout's job performance and that, instead of demoting Stout, Johnson transferred her to a better position. To support this allegation, White cites to Johnson's deposition in which Johnson states that when Stout left the clerk's office she left Johnson "with a mess." Pltf.'s resp., Ex. 4, Johnson deposition, 8:1-4. She also states that Stout failed to train some individuals prior to leaving the clerk's office. *Id*. at 8:6-9.

Although Johnson's deposition testimony indicates that Stout left her job without

appropriately closing out her work in the clerk's office, White's work performance in the county judge's office and Stout's work performance in the clerk's office cannot be compared for purposes of showing that similarly situated employees were treated differently. The Eighth Circuit has held that the test to determine if employees are similarly situated is a "rigorous" one. *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1992). To be similarly situated, employees must be similarly situated in all relevant respects. *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1998).

White and Stout are not similarly situated. White was the legislative assistant to the county judge, while Stout was the chief deputy clerk in the clerk's office. These are two totally different jobs. Indeed, White and Stout worked for two totally separate areas of county government and had different supervisors. Further, although White attempts to compare herself to Stout, who White portrays as having similarly poor work performance, this characterization is not quite accurate. When viewed closely, Johnson's deposition testimony shows that she was displeased with the state in which Stout left her position, not with the work she performed while in her position. This is in contrast to Holcomb's dissatisfaction with White's job performance. Therefore, White and Stout were not similarly situated.

White also attempts to support her assertion of discrimination with general allegations that Holcomb has employed people strictly due to their race. According to White, Holcomb does not allow opportunities for black persons to apply for management positions. As an example, she maintains that when a white employee, Nancy Holcomb, left the position of

manager of the county road department, the position was not open for anyone to apply. Instead, Holcomb selected Mike Hurst, a white male, for the position. White also references the fact that the population of Jefferson County, Arkansas is approximately 70% black, but Holcomb's appointed office staff is 100% white. These assertions and conclusory statements are not adequate to support a prima facie case of discrimination. Accordingly, summary judgment is granted to Holcomb and the Quorum Court on this claim.

B.      Due Process Claim

White claims she was denied due process because she was not afforded notice or the opportunity to be heard regarding her termination. Further, she was not allowed to appeal the decision. Summary judgment on this claim is granted to Holcomb and the Quorum Court.

For White to be entitled to due process, she must establish that she had a protected property interest in her continued employment. Such a protected interest is established only through state law or contract. "A public employee has a property interest when there are contractual or statutory limitations on the employer's ability to terminate an employee, such as a contractual right to be terminated only for cause." *Bennett v. Watters*, 260 F.3d 925, 927 (8th Cir. 2001). White has presented no evidence of such limitations. Absent such limitations, White was an at-will employee. *Griffin v. Erickson*, 277 Ark. 433, 436 (1982) ("It is generally, perhaps uniformly, held that when the term of employment is left to the discretion of either party, or left indefinite, or terminable by either party, either party may put an end to the relationship *at will* and *without cause*."). White fails to support her claim of

11

due process violations.

## IV.  CONCLUSION

Holcomb and the Quorum Court's motion for summary judgment [Doc. No. 12] is granted.  White's claims are dismissed with prejudice.

IT IS SO ORDERED this 3rd day of December, 2010.


_____
UNITED STATES DISTRICT JUDGE